# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                            Case No. 20-CR-41

LAMAR JOHNSON, et al.,

    Defendant.

# ORDER

## 1. Background and Procedural History

Defendant Lamar Johnson, accused of one count of conspiracy to distribute and possess with the intent to distribute controlled substances and one count of distribution of heroin (ECF No. 1), made his initial appearance before this court on February 25, 2020 (ECF No. 21). He was ordered temporarily detained until a detention hearing was held on February 28, 2020. (*Id.*) At that hearing Johnson requested to be detained on the presumption. (ECF No. 95.) A detention hearing was scheduled for March 5, 2020, but was cancelled at Johnson's counsel's request. On March 4, 2020, this court again ordered him detained on the presumption. (ECF No. 112.)

On May 7, 2020, Johnson filed what he titled a "Motion for Review of Order of Detention" to reopen the detention hearing pursuant to 18 U.S.C. § 3142(f). (ECF No. 156.) As grounds he points to the current public health crisis and argues that his detention hearing should be re-opened "because the coronavirus pandemic was unknown at the time of the hearing and because it has a material bearing on whether there are conditions of release that will reasonably assure his appearance as required and the safety of the community." (*Id.* at 1.) He also argues that, under 18 U.S.C. § 3142(i), he should be released in order to better assist with his defense and that similarly- and worse-situated defendants have been released, so he should be as well. (*Id.* at 4-6.) Finally, he makes arguments about the strength of the government's case and not being a risk of flight or danger to the community. (*Id.* at 6-10.)

If convicted, Johnson's charges carry a maximum term of imprisonment of ten years or more (*see* ECF No. 21 at 2), giving rise to a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3).

**2. Standard**

As the government correctly notes, even though Johnson stated that he is moving to reopen his detention hearing, he has not yet argued for detention—he was detained on the presumption and his last detention hearing was cancelled. So the court must "determine whether any condition or combination of conditions … will reasonably assure

2
Case 2:20-cr-00041-LA-NJ   Filed 05/27/20   Page 2 of 11   Document 174

the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f).

"[I]n determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community," the court must consider four factors. 18 U.S.C. § 3142(g). These factors are:

> (1) the nature and circumstances of the offense charged …;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person …[;] [and]
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g)(1)-(4).

Johnson was on supervised release in Case No. 11-CR-255 when he was arrested in the instant case. (ECF No. 163 at 7.) But because the court is a making a detention determination in the instant case and not in the case for which Johnson was on supervised release, the burden remains with the government to prove by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community, or to prove by a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.

**3. Analysis**

Johnson argues that the strength of the government's case is weak. (ECF No. 156 at 6-8.) He argues that "all of the evidence implicating [him] comes from the confidential source (CS#3), who would have a great incentive and motivation to implicate as many parties as possible for his own penal interests." (*Id.* at 7.) He further argues that he was not directly involved in any of the controlled buys (*Id.*)

Johnson next argues that he is not a flight risk or a danger to the community. (ECF No. 156 at 8-10.) He argues that he has been a resident of Milwaukee for his entire life and has strong family ties. (*Id.* at 8.) If released, he wishes to reside with his pregnant girlfriend in Milwaukee. (*Id.* at 9-10.) He further argues that he has only one prior conviction—for possession with intent to distribute cocaine from 2012—and no weapons offenses. (*Id.* at 8.) And, given the current health crisis, there is nowhere for him to flee. (*Id.* at 9.) Johnson also submitted six letters written by people on his behalf who all speak to his personal characteristics. (ECF No. 156-1.) Finally, Johnson argues that he should be released because "[o]ther similarly-situated and some even worse-situated defendants have been released on bond." (ECF No. 156 at 6.)

The government responds that "Johnson was an integral component of a major drug trafficking organization" (ECF No. 163 at 7), which included "arranging a particular singular distribution of more than forty grams of heroin" (*id.* at 8). It further argues that the strength of its case against Johnson is strong, not only because of information

gathered from a confidential informant but also because of items recovered the day Johnson was arrested. (*Id.* at 8-9.) A subsequent search warrant enabled law enforcement to review two phones found in Johnson's car, and further evidence of drug trafficking was found on the phones: "(i) references to 'fronting'; (ii) multiple inquiries concerning the price of an unspecified good (i.e., 'What can I get for 10'); and a picture of crack cocaine on a digital scale[.]" (*Id.* at 9.)

The government also argues that Johnson's history and characteristics warrant detention. (ECF No. 163 at 10.) His criminal history includes attempted theft and carrying a concealed weapon, a fine for possession of marijuana, and a conviction for possession with intent to distribute cocaine and cocaine base. (*Id.* at 2-3.) And although Johnson argues that he has substantial ties to the community and will be able to work if released, the government argues that "these factors were in place when [Johnson] was selling drugs on federal supervised release," so "[they] are therefore minimally probative as to the question of whether [Johnson] will return to dealing drugs if he is released." (*Id.* at 10.) Finally, the government argues that Johnson is a danger to the community because of the risk he will continue drug trafficking if released, his use of firearms, and a risk that he will become physically violent given a past arrest for battery. (*Id.* at 10-12.) And the government is not convinced that Johnson is not a flight risk, given how he has acted in the past while on supervision. (*Id.* at 12.)

5

Johnson filed a reply brief in which he questions the strength of the evidence against him. In response to the government's assertion that "Johnson, in a recorded telephone call, arranged for the delivery of heroin to the government's informant" (ECF No. 163 at 5), Johnson argues that "[at] no time is [he] ever seen or heard on the recording, and no evidence has been provided by the Government to show that any party's voice on the phone is the defendant's." (ECF No. 171 at 1.) Johnson also argues that that he will be able to provide his work schedule and commute time to dispute testimony from the CI that he was involved in transactions at certain times. (*Id.* at 2.) And, finally, Johnson argues that, although the cellphones were found in his car, it was a rental car that "Johnson would rent out … to other parties, and it was driven by those parties." (*Id.* at 3.)

Johnson is charged with a serious offense that carries significant prison time. Even though Johnson calls into question the strength of the government's evidence, that is just one factor the court is to consider. In 2012 he was convicted of possession with intent to distribute 550 grams or more of cocaine and 28 grams or more of cocaine base. For that offense he served nearly six years in prison. He was released to supervision on June 13, 2018, and it was while he was on supervised release that he is alleged to have engaged in the conduct with which he is charged in this case. Therefore, the court finds that Johnson would pose a danger to the community if released.

Thus, the government has proven by clear and convincing evidence that the § 3142(g) factors warrant detention. The only issue is whether the current pandemic warrants a different outcome.

### 3.1. COVID-19

Johnson argues that he should be released because of the current health crisis. (ECF No. 156 at 2-6.) COVID-19 affects defendants differently and affects inmates of different jail populations differently. An inmate with an underlying health condition housed at a facility with a COVID-19 outbreak is in a much different situation than a healthy inmate at a facility with no confirmed cases.

Johnson is currently housed at the Waukesha County Jail, where he argues that at least one inmate and one correctional officer have tested positive. (ECF No. 156 at 2.) But Johnson does not allege that he is particularly vulnerable to contracting COVID-19 or that he is currently suffering from any health conditions. Thus, the current health crisis does not justify release in Johnson's situation.

### 3.2. Ability to Assist in His Own Defense

Johnson also argues that he should be released pursuant to 18 U.S.C. § 3142(i), which states, in relevant part:

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or another compelling reason.

7

Johnson argues that the conditions at the Waukesha County Jail do not enable him to adequately prepare his defense. He argues that, at the Waukesha County Jail, collect calls made by an inmate, even to his lawyer, are recorded. (ECF No. 156 at 4-5.) Johnson asserts that "[t]he only way for a lawyer to communicate in confidence with a client in the Waukesha County Jail is to disregard the recommendations of public health officials and visit the client in the jail." (*Id.* at 5.)

In response, the government argues that Johnson is able to prepare his defense because he still has access to phone calls and visits with his lawyer. (ECF No. 163 at 14.) The government argues that "Waukesha County Jail staff confirmed that they have increased screening at the facility; cancelled public visitation; increased cleaning protocols; and made '[a]dditional cleaning supplies stations' available 'for professional visits so attorneys can also sanitize the interview rooms prior to and after visits.'" (*Id.* at 14-15.)

As the government argues, if "the Court were to credit [Johnson's] argument under Section 3142(i), every single federal detainee in the Waukesha County Jail would be entitled to release." (ECF No. 163 at 15.) As the court previously noted in its order regarding co-defendant Garrell Hughes (ECF No. 158 at 6), the court is certainly concerned about inmates' inability to speak privately with his counsel. As correctional facilities figure out new protocols, they will be better at assisting counsel to communicate privately with their clients without having to make a visit to the jail.

While the court certainly appreciates counsel's desire to communicate privately with his client, the posture of the case right now does not necessitate releasing Johnson from custody. As noted for his co-defendant Hughes, no deadline has yet been set for filing pretrial motions and no trial date has been set. *See United States v. Leake*, 19-cr-194 (KBJ), 2020 WL 1905150, at *4 (D.D.C. Apr. 17, 2020) ("There is no scheduled proceeding that requires imminent preparation by [defendant] and his counsel here, and the mere fact that counsel calls are now shorter and generally more difficult to schedule or conduct … cannot be all that is needed to support the contention that a defendant's temporary release is 'necessary' under section 3142(i).") (internal citation omitted). Thus, it is not necessary that Johnson be released immediately to assist in the defense of this action. If in the future it becomes necessary to release Johnson due to impending deadlines and the jail's inflexibility in making accommodations so that counsel can have private conversations with Johnson without placing himself in jeopardy, the motion can be reviewed.

**3.3. Other Defendants**

Finally, Johnson argues that he should be released from custody because "[o]ther similarly-situated and some even worse-situated defendants have been released on bond." (ECF No. 156 at 6.) He asserts that other defendants who have been released have prior convictions for drug trafficking, possession of firearms, and violent crimes. (*Id.*) He argues that, although he has a prior federal drug conviction, he does not have a history

9

Case 2:20-cr-00041-LA-NJ   Filed 05/27/20   Page 9 of 11   Document 174

of violence or firearms possession.[1] (*Id.*) He alleges he was a "lower-level dealer via past association who had no leadership capacity in the alleged conspiracy." (*Id.*) Therefore, he argues that he should be released as a matter of "fairness." (*Id.*)

As noted earlier, in determining whether a defendant should be released on bond, the court considers several factors. Whether other defendants were or were not released, and the rationale behind those decisions, is not a factor. The court does not find that isolating one or even two of the § 3142(g) factors and comparing them across co-defendants is an effective means of determining whether to release a particular defendant.

**4. Conclusion**

While the extraordinary circumstances presented by the current pandemic may warrant efforts to limit jail populations, those efforts are necessary to make sure jails are as safe as possible for those individuals for whom release is not appropriate. The current record shows that Johnson is a person who must remain detained.

**IT IS THEREFORE ORDERED** that Johnson" Motion for Review of Order of Detention" (ECF No. 156) is **denied and Johnson shall remain detained.**

---

[1] In 2011 Johnson was charged with "Possession of a Firearm in Furtherance of Drug Trafficking," but the government dismissed this charge when Johnson pleaded guilty to the drug offense. (ECF No. 163 at 2-3.)

Dated at Milwaukee, Wisconsin this 27th day of May, 2020.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge